AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Subject Device: A Blue Samsung Galaxy S10, more
fully described in Attachment A.

)
)
)
)
)
)

Case No.    MJ23-151

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Subject Device: A Blue Samsung Galaxy S10, more fully described in Attachment A.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C § 841(b)(1)(C) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |
| 18 U.S.C. §§ 924(c)(1)(A)(i) , 922(g)(1) | Unlawful Possession of Firearms |

The application is based on these facts:

✓ See Affidavit of Special Agent Patrick D. Ryan, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Patrick D. Ryan, Special Agent (HSI)
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:    _____4/4/2023_____

_____
*Judge's signature*

City and state:   Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

Attachment A

Property to be Searched

The SUBJECT DEVICE is described as follows: a **blue Samsung Galaxy S10 cellular phone** currently in the custody of Homeland Security Investigations in Seattle, Washington.

ATTACHMENT A - 1
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attachment B

Items to be Seized

Evidence, fruits, and instrumentalities of violations of: Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) Possession with Intent to Distribute a Controlled Substance, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), and Title 18, United States Code, Section 922(g)(1) Unlawful Possession of Firearms, as well as attempt or conspiracy to commit such offenses, committed on January 15, 2023:

1. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

2. Stored lists of recent received, sent, or missed calls on January 15, 2023;

3. Stored contact information;

4. For the date of December 1, 2022 through January 15, 2023, for the following: stored photographs and videos of narcotics; stored photographs and videos which relate to customers and their identifying information; stored photographs and videos which relate to the sources, amounts, types, payments for, and prices of drugs; and stored photographs or videos that show the user of the phone and/or suspected co-conspirators;

5. For the date of December 1, 2022, through January 15, 2023, for the following: stored text messages related to the aforementioned crimes of investigation, including Apple iMessages, SnapChat, or text messages, or other similar messaging services or applications where the data is stored on the telephones; and

6. Evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user

ATTACHMENT B - 1
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    profiles, email, email contacts, "chat," instant messaging logs, photographs,

2    and correspondence;

3

4    As used above, the terms "records" and "information" include all of the foregoing

5    items of evidence in whatever form and by whatever means they may have been created

6    or stored, including any form of computer or electronic storage (such as flash memory or

7    other media that can store data) and any photographic form, including emails,

8    photographs, text messages, information contained in applications or "apps," and

9    calendar entries.

10   This warrant authorizes a review of electronic storage media and electronically stored
     information seized or copied pursuant to this warrant in order to locate evidence, fruits,

11   and instrumentalities described in this warrant.  The review of this electronic data may be

12   conducted by any government personnel assisting in the investigation, who may include,
     in addition to law enforcement officers and agents, attorneys for the government, attorney

13   support staff, and technical experts.  Pursuant to this warrant, DEA may deliver a
     complete copy of the seized or copied electronic data to the custody and control of

14   attorneys for the government and their support staff for their independent review.

15   THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE

16   MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS
     SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO

17   THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC

18   STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL
     ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE

19   CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR
     EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED

20   CRIMES.

21

22

23

24

25

26

27

ATTACHMENT B - 2
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

# AFFIDAVIT

2 STATE OF WASHINGTON )

3 ) ss

4 COUNTY OF KING )

5

6 I, Patrick D. Ryan, a Special Agent with the United States Department of Homeland

7 Security, Homeland Security Investigations (HSI), Seattle, Washington, having been duly

8 sworn, state as follows:

9 ## **AFFIANT BACKGROUND**

10 1. I am a "law enforcement officer of the United States" within the meaning of

11 Title 18, United States Code, Section 2510(7), who is empowered by law to conduct

12 investigations of, and to make arrests for, offences enumerated in Title 18, United States

13 Code, Section 2516. I am employed as a Special Agent (SA) with the United States

14 Department of Homeland Security, Homeland Security Investigations (HSI). I have

15 served with HSI since April 2009 and am currently assigned to HSI Seattle's Narcotics

16 and Bulk Cash Smuggling investigative group as a criminal investigator. I am a graduate

17 of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received

18 training on how to investigate violations of laws relating to controlled substances and

19 prepare and execute search and arrest warrants. Prior to my current assignment, I was

20 assigned to the human trafficking/human smuggling investigative group of HSI, where I

21 identified and investigated the means and tactics used by human smugglers and

22 traffickers to transport and conceal humans.

23 2. I also worked as a Deputy Sheriff for the Douglas County Sherriff's Office

24 in Minden, Nevada from 2002 to 2009. My duties included, among other things,

25 identifying vehicle traffic likely to be transporting contraband based on driver behavior

26 and vehicle condition.

27

AFFIDAVIT OF SA Ryan - 1
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      Prior to working as a Deputy Sheriff, I was an enlisted member of the United States Coast Guard for nearly ten years, where I conducted various law enforcement-related tasks such as commercial fisheries enforcement, narcotics interdiction, recreational boating safety, and maritime search and rescue. For three of my ten years in the Coast Guard, I was part of a seven-person tactical team that focused on boarding private and commercial vessels in accordance with United States Law and searching those vessels for contraband using techniques designed to identify and access hidden compartments and other methods of concealment.

4.      I was also involved in United Nations sanction enforcement. In that role, I searched vessels for weapons in the Persian Gulf employing techniques designed to locate and identify concealed foreign military weapons or weapon components affixed to non-military or industrial heavy equipment, or foreign military components disguised to look like civilian industrial equipment.

5.      During the course of my employment with HSI, I have participated in the investigation of numerous cases relating to narcotics trafficking and smuggling.  My training and experience in narcotics enforcement has included the identification of narcotics, including cocaine, methamphetamine, heroin, MDMA ("ecstasy") and the investigation of persons in possession of narcotics for purposes of sales and transportation, as well as persons conspiring to transport and sell narcotics.  I dialogue regularly with narcotics investigators at the federal, state, and local level, sellers of narcotics, and informants regarding the manner in which sellers of narcotics store, sell, and transport narcotics.

6.      I make this affidavit in support of this search warrant based both on personal knowledge and on information I have obtained from a review of official reports prepared by other law enforcement officers and/or discussions with those officers. Because this affidavit is made for the limited purpose of establishing probable cause to

AFFIDAVIT OF SA Ryan - 2
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   support the application for a search warrant, it does not contain all of my knowledge

2   regarding the surrounding circumstances.

3   **INTRODUCTION AND PURPOSE OF AFFIDAVIT**

4   7.      This affidavit is submitted for the limited purpose of establishing probable

5   cause to search a **blue Samsung Galaxy S10 cellular phone (hereafter SUBJECT**

6   **DEVICE)** which is currently in the custody of the HSI Evidence Custodian in Seattle,

7   Washington.

8   8.      As set forth below, there is probable cause to believe that the SUBJECT

9   DEVICE contains evidence, fruits and instrumentalities of the following crimes:  Title

10  21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) Possession with

11  Intent to Distribute a Controlled Substance, Possession of a Firearm in Furtherance of a

12  Drug Trafficking Crime in violation of Title 18, United States Code, Section

13  924(c)(1)(A)(i), and Title 18, United States Code, Section 922(g)(1) Unlawful Possession

14  of Firearms, as well as attempt or conspiracy to commit such offenses (hereinafter the

15  "TARGET OFFENSES") as further described in Attachment B, attached hereto and

16  incorporated by this reference.

17  **SUMMARY OF PROBABLE CAUSE**

18  9.      Seattle Police Department Detective Melody Rios conducted an

19  investigation into PEDRO FERNANDEZ KENT under incident number 2023-14396

20  following a series of domestic violence incidents that culminated with KENT's arrest as

21  described herein.  The domestic violence incidents involved victim A.R. (hereafter

22  VICTIM).  KENT and VICTIM were short-term roommates for approximately two

23  months and briefly dated that timeframe.

24  10.     On January 15, 2023, Seattle Police Officers Hay and Carter working patrol

25  in a fully marked Seattle Police Department patrol vehicle within the City limits of

26  Seattle, when they were dispatched to the address located on Evanston Avenue North to

27  investigate a domestic violence threats call. Enroute to the residence, Officer Carter

AFFIDAVIT OF SA Ryan - 3
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   called VICTIM to assuage her fears should KENT observe the patrol car arrive because

2   VICTIM expressed belief KENT would kill her if she called the police based upon his

3   threat to do so. VICTIM explained having first met KENT approximately two months

4   earlier at a gas station in the Greenwood neighborhood.  She described spending time

5   with KENT thereafter.  On several occasions the two engaged in consensual kissing.

6   VICTIM explained having suffered several hardships throughout 2022, causing her to

7   relapse and admitted purchasing cocaine from KENT.

8         11.    VICTIM described experiencing a series of domestic violence assaults

9   perpetrated by KENT over the course of the two months.  One occasion occurred a few

10  days prior to New Year's Eve when KENT was at VICTIM's home.  VICTIM described

11  KENT took issue with the way VICTIM's friend looked at the VICTIM.  After the friend

12  left the residence, KENT pulled a handgun from his waistband, pointed the handgun at

13  VICTIM, and stated, "Watch yourself. I'm not afraid to kill you." KENT then threw

14  VICTIM against a dresser, smashing and knocking over items, and hit VICTIM in the

15  head with a firearm severely cutting her lip.

16        12.    VICTIM described another incident which occurred over New Year's Eve

17  weekend.  VICTIM offered KENT a place to stay for three days during the period of the

18  week where she did not have custody of her daughter provided KENT assist with rent. On

19  December 30, 2022, VICTIM explained she informed KENT he was beginning to

20  overstay his welcome.  VICTIM described KENT "flipped out," refused to leave, and

21  stated the residence was his and VICTIM was "his" as well. When VICTIM informed

22  KENT she would call the police, KENT pulled a handgun from his waistband and

23  pointed the handgun at her head while saying, "Bitch. I will kill you." KENT then

24  slapped VICTIM in the face with an openhand fist.

25        13.    VICTIM explained the next incident occurred between January 1, 2023,

26  through January 2, 2022, when KENT was VICTIM's residence.  VICTIM reported

27  KENT received a phone call from an unknown subject then proceeded to go through

AFFIDAVIT OF SA Ryan - 4
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

personal belongings, including what VICTIM thought was possibly narcotics located in a tin can. VICTIM suspected the phone call was a narcotic transaction as she was aware that KENT sold narcotics and kept the narcotics in his backpack.  When VICTIM requested KENT not engage in drug trafficking at her residence, KENT responded, "I will burn your house down" and ordered her not to call the police.  KENT then grabbed a rifle from a chair in the living room and hit a television with the rifle, shattering it. KENT then punched a hole in a second television before grabbing VICTIM's keys and leaving. VICTIM did not report these crimes to the police.

14.     On January 15, 2023, at approximately 1015 hours, VICTIM explained KENT returned to her house, banged on the front door, wiggled the front doorknob, and said, "Bitch. Let me get my stuff." VICTIM did not answer her door, but replied that her kids were home, and he needed to leave.  KENT responded, "You fucking bitch. You are going to get what's coming to you. I'm going to fuck you up." VICTIM reported KENT then left the front door entry and sat in his vehicle in the driveway for approximately fifteen minutes. At approximately 1155 hours, KENT's brother called VICTIM requesting she return KENT's belongings. VICITM explained that she did not want to return the belongings as KENT owed her money for damaging her residence.

15.     VICTIM stated she was afraid for her safety due to KENT's possession and use of firearms. VICTIM disclosed KENT always carried a firearm and had access to a handgun and two rifles. VICTIM then disclosed she was previously in an assaultive domestic relationship for over twenty years. She did not call police during or after the above detailed incidents due to being in fear for her life and explained only having gathered the courage to call after speaking to a co-worker, who encouraged her to do so after observing VICTIM's injuries. During the phone call with Officer Carter, VICTIM broke down crying.

16.     After the completion of the phone call, Officer Hay and Officer Carter drove past VICTIM's residence to ensure KENT and his registered vehicle, a distinctive

AFFIDAVIT OF SA Ryan - 5
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

red Mustang with a black convertible top were not there. While driving westbound on North 105 Street near Dayton Avenue North, Officer Hay observed KENT driving his Mustang eastbound past their patrol vehicle (just a few blocks from VICTIM's residence and closing the distance). The officers turned around and followed KENT and activated the emergency lights and chirped their patrol vehicle's emergency sirens to command KENT to pull over. Instead, KENT accelerated at a high rate through neighborhood streets. At the intersection of North 97 Street and Linden Avenue North, KENT drove toward oncoming traffic and around the wrong side of a roundabout. At the intersection of Fremont Avenue North and North 97 Street, KENT drove through a stop sign, then drove to the left of a roundabout (i.e. the wrong side) and clipped two curbs. This caused one of KENT's tires to flatten and blow out. At the intersection of North 97 Street and Evanston Avenue North, KENT's vehicle slowed and KENT fled from the Mustang leaving the car in the intersection. As KENT ran southbound on Evanston Avenue North he reached his right hand to the rear and down toward his waistband and grabbed a silver handgun. KENT then ran southbound with the handgun in his right hand as captured from fleet camera footage depicted in *Figure 1* below.



**Figure 1**

AFFIDAVIT OF SA Ryan - 6
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17.     KENT quickly turned his head around his right shoulder toward Officers Hay and Carter driving south in their patrol vehicle and raised the firearm back towards the officers before fleeing.  Numerous officers from around the city arrived on-scene and set up containment around the area. Witnesses JG and MG (WITNESSES) called 9-1-1 to report a suspect was in their backyard.  Officers contained the property while the K-9 track progressed. KENT was located in the WITNESSES backyard, was arrested without incident, and booked into the King County Jail.

18.     The canine located a dark colored sweatshirt matching the sweatshirt that KENT was seen wearing while fleeing his vehicle in the WITNESSES driveway. A silver Ruger 9mm serial #30210376 was wrapped in the black sweatshirt that was less than 50 feet away from KENT's arrest location. The firearm was loaded with four live 9mm ammunition rounds, including two hollow-point rounds. Notably, the firearm was also in a malfunctioned state with a possible "double feed" of rounds, having two rounds inside of the chamber.  The Ruger matched the handgun Officer Carter observed KENT point at himself and Officer Hay.  *Figure 2* below depicts the scene layout.

AFFIDAVIT OF SA Ryan - 7
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



***Figure 2***

19.     A blue Samsung Galaxy S10 cellphone (SUBJECT DEVICE) was located by Seattle Police officers along the path between where KENT fled from his Mustang and the location where officers recovered the Ruger 9mm as depicted in *Figure 3* below.

AFFIDAVIT OF SA Ryan - 8
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



*Figure 3*

21

22    20.    Officers seized KENT's Mustang and towed it to a secured police parking

23 lot pending a search warrant.  On January 17, 2023, a King County Superior Court search

24 warrant was authorized.  The following items of evidence were located and are depicted

25 in *Figure 4* below:

26    • US Carbine Rifle, Israel Arms International, Model 888, Serial number: 200405,
         found in trunk;

27    • Empty magazine inserted in rifle;

AFFIDAVIT OF SA Ryan - 9
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- 7 rounds of .38 special ammunition, 1 Hornady round, 6 ammo Inc. rounds, located center console;
- 6 rounds of 9mm, Luger X-treme hollow point, found in the cupholder;
- Dagger in sheath, found behind driver's seat;
- Folding knife, found in driver door;
- Suboxone, found in driver door;
- Hatchet, found behind driver's seat;
- KENT's Washington State Driver's License, found in small pouch in the backpack on the driver's seat;
- KENT's casino card, found in the center console;
- Digital scale, found behind passenger seat;
- Digital scale, found in the front pouch in the backpack on the driver's seat;
- Small plastic baggies for narcotic packaging and distribution, in the laptop pouch of the backpack on the front driver's seat;
- 0.5 grams of suspected cocaine, located in front pouch of backpack on driver's seat; and
- Front pouch of black bag on front driver floorboard, found with the following narcotics field tested by Officer Hay:
  - 19.7 grams of cocaine;
  - 7.6 grams of heroin;
  - 58.5 grams of methamphetamines;
  - 31.2 grams of Xanax;
  - 3 M30 pills among marijuana;
  - 33.2 grams of marijuana;
  - 122.9 grams of M30 pills; and
  - 27.2 grams of methamphetamines.

//

//

AFFIDAVIT OF SA Ryan - 10
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11



***Figure 4***

12   21.   I reviewed KENT's criminal history. Based upon my review of criminal

13   history records, I have determined that KENT has been convicted of multiple felonies

14   rendering him ineligible to possess a firearm, including most recently: (1) Residential

15   Burglary, Theft of a Motor Vehicle, Assault in the Second Degree, and Taking a Motor

16   Vehicle in King County Superior Court under case number 16-1-05638-1 on 06/09/2017;

17   and (2) Trafficking in Stolen Property in King County Superior Court under case number

18   12-1-04091-1 on 10/04/2012.

19   22.   On February 22, 2023, Bureau of Alcohol, Tobacco, Firearms and

20   Explosives SA Catherine Cole, a certified Interstate Firearms and Ammunition Nexus

21   Expert, who has been trained in the recognition of firearms and ammunition and their

22   origin of manufacture, reviewed photographs of a US Carbine Rifle, Israel Arms

23   International, Model 888 and a Ruger 9mm handgun.  SA Cole determined that the

24   firearms were not manufactured in the State of Washington.  Based upon her experience,

25   knowledge, and research, it is also SA Cole's opinion that the above-listed firearms meet

26   the definition of a firearm under Title 18, United States Code, Section 921(a)(3).

27

AFFIDAVIT OF SA Ryan - 11
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.     On March 8, 2023, a Grand Jury in the Western District of Washington returned and Indictment charging KENT for violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) Possession with Intent to Distribute a Controlled Substance, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), and Title 18, United States Code, Section 922(g)(1) Unlawful Possession of Firearms.

## **TECHNICAL TERMS**

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24

AFFIDAVIT OF SA Ryan - 12
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

       d.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

       e.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same  state.

      25.    I know based on my own training, experience, and research, that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, and/or GPS navigation device. In my training and experience, examining data stored on devices such as the SUBJECT DEVICE can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES OF DISTRUBUTION OF AND POSSESSION WITH INTENT TO DISTRIBUTE CONTROLLED SUBSTANCES, UNLAWFUL POSSESSION OF FIREARMS AND POSSESSION OF FIREARMS IN FURTHERANCE OF DRUG TRAFFICKING

      26.    I know from training and experience that people own cellular telephones and smartphones for the purpose of being able to use them wherever they are, and as such carry them virtually constantly, or are nearly always within the near vicinity of their cell phones and/or portable devices. People often use smartphones to communicate with their

AFFIDAVIT OF SA Ryan - 13
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

associates and will sometimes store associates contact or identity information in contact lists, speed dial lists, or other areas of the phone. The communications can occur in many ways, including through typical cellular phone calls, instant messaging, text messages, SMS communications, chat sessions, email and social networking websites. I know that people use cellular phones to document and share information about their activities through phone calls, email, text messages, instant messages, SMS communications, photographs, videos, notes, and digital or voice memos that depict, discuss, or identify crime scenes, contraband, proceeds, victims, accomplices, or other evidence. Some of these communications are directed to another person or persons. Others are posted and shared more publicly, as happens with chat sessions and social networking websites.

27. Smartphone users can also use their phones for calendar items, web surfing, and obtaining directions to locations. A cellular telephone typically stores, without action by the user, evidence of this use and activity of the phone in its memory and other onboard or external storage such as SIM card or Micro SD card, as well as information, such as call logs, address books, messages sent and received, images, audio and video files, personal calendars, documents, as well as IP addresses (unique numeric identifiers assigned when a device assesses the internet) and profiles for wireless networks to which they have been connected using wired or Wi-Fi connectivity, which include location as well as internet activity information (files viewed via the internet are typically automatically downloaded onto a computer). These evidentiary records, communications, and images can be retrieved from a cellular telephone, and will also often indicate the date, time, and physical location at which the activity occurred (cell site data and/or GPS coordinates for the phone). As such, a person's use of the phone will reveal where a person has been at particular dates and times relevant to the crimes under investigation in this case, a person's activity at relevant dates and times, and/or places where a person frequents at which that person is likely to be found for arrest or at which the suspect stored or inadvertently left evidence behind.

AFFIDAVIT OF SA Ryan - 14
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28.     I also know, based on my training and experience, that individuals engaged in criminal activity will often use cellular phones to take photographs of themselves with contraband.  They will then send those pictures via MMS, email, or other electronic means to their associates, and/or post said pictures on social media such as Facebook, Snapchat, Instagram, and similar sites.  From cell phones and social media sites, I have frequently seen and recovered photographs that depict suspects (including prohibited suspects) displaying and/or contraband.

29.     Drug traffickers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs and/or firearms. Third, they can be passed between members of a conspiracy to allow substitution when one member is unavailable or  incapacitated.

30.     Since cellular phone use became widespread, all or nearly all drug dealers I have contacted have used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession phones they previously used, but have discontinued using, for their drug trafficking business. Notably, the VICTIM reported observing KENT using a cellular device while engaging in drug trafficking as described above, in addition to having purchased cocaine from KENT.

31.     In addition, I also know that prohibited persons, such as KENT, cannot legally acquire firearms from a firearms dealer due to the legal requirement for a background check.  Accordingly, prohibited persons, such as KENT, will instead acquire the firearms from other individuals.  Evidence of their negotiations for the purchase and sale of illicit firearms, in the form of text messages and/or other messaging applications, can and often are found on cell phones possessed by suspects.  I have personally had the

AFFIDAVIT OF SA Ryan - 15
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

experience of searching, or causing others to search, cell phones seized during firearms cases and found communications evidencing the acquisition and possession of firearms.

32.     Based on my training and experience, the data maintained in a cellular telephone used by a drug trafficker and prohibited persons is evidence of a crime or crimes. This includes the following:

a.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow law enforcement to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.     The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.     Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.     Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the trafficking organization. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it

1  can show where coconspirators meet, where they travel, and where assets might be
2  located.

3         e.      Stored address records are important evidence because they show the
   user's close associates and family members, and they contain names and nicknames
4  connected to phone numbers that can be used to identify suspects.

5  **ELECTRONIC STORAGE AND FORENSIC ANALYSIS FOR THE CRIMES OF**
6  **DISTRUBUTION OF AND POSSESSION WITH INTENT TO DISTRIBUTE**
7  **CONTROLLED SUBSTANCES, UNLAWFUL POSSESSION OF FIREARMS,**
8  **POSSESSION OF A FIREARM IN FURTHERANCE OF DRUG TRAFFICKING**
9  **CRIMES**

10        33.     Based on my knowledge, training, and experience, I know that electronic
11 devices can store information for long periods of time. Similarly, things that have been
12 viewed via the Internet are typically stored for some period of time on the device used to
13 access the Internet. This information can sometimes be recovered with forensic tools.

14        34.     *Forensic evidence*. As further described in Attachment B, this application
15 seeks permission to locate not only electronically stored information that might serve as
16 direct evidence of the crime described on the warrant, but also forensic evidence that
17 establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it,
18 and when. There is probable cause to believe that this forensic electronic evidence might
19 be on the SUBJECT DEVICE because:

20        a.      Data on the storage medium can provide evidence of a file that was
   once on the storage medium but has since been deleted or edited, or of a deleted portion
21 of a file (such as a paragraph that has been deleted from a word processing file).

22        b.      Forensic evidence on a device can also indicate who has used or
23 controlled the device. This "user attribution" evidence is analogous to the search for
   "indicia of occupancy" while executing a search warrant at a residence.
24

25        c.      A person with appropriate familiarity with how an electronic device
26 works may, after examining this forensic evidence in its proper context, be able to draw
   conclusions about how electronic devices were used, the purpose of their use, who used
27 them, and when.

AFFIDAVIT OF SA Ryan - 17
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35.      *Manner of execution*. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SEARCH AND/OR SEIZURE OF DIGITAL DEVICE

36.      Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit imaging or otherwise copying all data contained on the S U B J E C T  DEVICE, and will specifically authorize a review of the media or information consistent with the warrant.

37.      In accordance with the information in this affidavit, law enforcement personnel will execute the search of the SUBJECT DEVICE seized pursuant to this warrant as follows:

a.      *Securing the Data*. In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of the Device.[1]  Law

---

[1] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and

AFFIDAVIT OF SA Ryan - 18
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

enforcement will only create an image of or extract data physically present on or within the Device. Creating an image of or extracting data from the Device will not result in access to any data physically located  elsewhere. However, devices that have previously connected to devices at other locations may contain data from those other locations.

b.      *Searching the Forensic Data.* Searching the forensic data for the item described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

//

//

---

investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

AFFIDAVIT OF SA Ryan - 19
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **CONCLUSION**

2    38.    Based on the information set forth herein, there is probable cause to believe

3  the property described in Attachment A contains evidence, instrumentalities, and/or fruits

4  of violations of the TARGET OFFENSES, to wit:  Title 21, United States Code, Sections

5  841(a)(1), 841(b)(1)(B), 841(b)(1)(C) Possession with Intent to Distribute a Controlled

6  Substance, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in

7  violation of Title 18, United States Code, Section 924(c)(1)(A)(i), and Title 18, United

8  States Code, Section 922(g)(1) Unlawful Possession of Firearms, as well as attempt or

9  conspiracy to commit such offenses, as further described in Attachment B.

10

11

12                                                    PATRICK D. RYAN, Affiant

13                                                    Special Agent, HSI

14

15    SUBSCRIBED AND SWORN before me this ___4th___ day of ~~March~~ April, 2023

16

17

18

19                                                    THE HON. MICHELLE L. PETERSON

                                                      United States Magistrate Judge

20

21

22

23

24

25

26

27

AFFIDAVIT OF SA Ryan - 20
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attachment A

Property to be Searched

The SUBJECT DEVICE is described as follows: a **blue Samsung Galaxy S10 cellular phone** currently in the custody of Homeland Security Investigations in Seattle, Washington.

ATTACHMENT A - 1
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attachment B

Items to be Seized

Evidence, fruits, and instrumentalities of violations of: Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) Possession with Intent to Distribute a Controlled Substance, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), and Title 18, United States Code, Section 922(g)(1) Unlawful Possession of Firearms, as well as attempt or conspiracy to commit such offenses, committed on January 15, 2023:

1. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

2. Stored lists of recent received, sent, or missed calls on January 15, 2023;

3. Stored contact information;

4. For the date of December 1, 2022 through January 15, 2023, for the following: stored photographs and videos of narcotics; stored photographs and videos which relate to customers and their identifying information; stored photographs and videos which relate to the sources, amounts, types, payments for, and prices of drugs; and stored photographs or videos that show the user of the phone and/or suspected co-conspirators;

5. For the date of December 1, 2022, through January 15, 2023, for the following: stored text messages related to the aforementioned crimes of investigation, including Apple iMessages, SnapChat, or text messages, or other similar messaging services or applications where the data is stored on the telephones; and

6. Evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user

ATTACHMENT B - 1
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form, including emails, photographs, text messages, information contained in applications or "apps," and calendar entries.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.

ATTACHMENT B - 2
*United States v. Kent* CR23-0034 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970